**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------X
In re:

ANNA M. DISPIRITO

                                                                                                               Chapter 13
                                                                                                               Case No:
                                                                                                               07-11605 (MBK)

                            Debtor.
-------------------------------------------------------X

**APPEARANCES:**

Candyce Ilene Smith-Sklar
Law Offices of Sklar Smith-Sklar
1901 North Olden Avenue
Ewing Professional Park, Suite 48
Ewing, NJ 08618

Attorney for Debtor


John R. Morton, Jr., Esq.
110 Marter Ave., Suite 301
Moorestown, NJ 08057
Attorney for Ford Motor Credit Company

Albert Russo, Esq.
Standing Chapter 13 Trustee
1 AAA Drive, Suite 101
Robbinsville, NJ 08691

-------------------------------------------------------------------------------------------------------------------------------------------

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM OPINION**

1

I.    **UNDISPUTED FACTS AND PROCEDURAL HISTORY**

On June 19, 2004, the debtor, Anna Dispirito (the "Debtor"), executed a retail installment contract in connection with the purchase of a 2002 Ford Explorer. On February 6, 2007, the Debtor filed the within Chapter 13 proceeding and proposed Chapter 13 plan ("Plan"). In the Plan, the Debtor scheduled the claim of Ford Motor Credit Company ("Ford Credit") at $12,000, expressed the intent to modify the claim pursuant to 11 U.S.C § 1322(b)(2) and to pay the sum of $9,800, without interest, representing the alleged fair market value of the vehicle (the "Cramdown"). In addition, the Plan offered no adequate protection payments to Ford Credit, which objected to the Plan. Specifically, Ford Credit contested the valuation of the vehicle and contended that the Plan's failure to provide for adequate protection payments to Ford Credit violated 11 U.S.C § § 361, 1325 and 1326. Ford Credit sought adequate protection payments either equal to the depreciation of the vehicle or equal to the regular monthly payment. In this regard, Ford Credit demanded an adequate protection payment equal to 1.75% of the value of the vehicle each month, or $185 per month during the time that regular payments could not be made, both before and after confirmation. Ford Credit also objected to the Plan's failure to provide for interest to be paid in accordance with In re Till, 541 U.S. 465, 124 S. Ct. 1951, 158 L. Ed. 2d 787 (2004). In addition to filing an objection to the Plan, Ford Credit also filed a separate motion seeking payment of adequate protection ("Adequate Protection Motion").

On April 24, 2007, the parties reached a consensual resolution of the Adequate Protection Motion and advised the Court that an order would be submitted reflecting the settlement. Thereafter, the Debtor filed a Modified Chapter 13 Plan ("Modified Plan") which increased the payment to Ford Credit to $10,300 with interest thereon calculated at 10.25%, for a total of

2

$13,445.25.[1] With respect to the demand for adequate protection, counsel for Ford Credit submitted a proposed order providing for monthly direct payments of $110, commencing March, 2007 and included the following provision, to which the Debtor objected:

> **Duration of adequate protection payments:** Adequate protection payments shall be made monthly to Ford Motor Credit Company until all counsel fees have been paid and regular distributions begin to be made to Ford Credit. If in any month there are insufficient funds on hand to pay both counsel fees and adequate protection payments, then funds on hand shall be used to pay adequate protection payments first, with the remaining balance going to counsel fees. If, after confirmation, counsel fees remain to be paid, then adequate protection payments shall continue to be paid to Ford Motor Credit until the remaining counsel fees have been paid.

Pertinently, the Debtor argued that adequate protection payments should be paid up to confirmation and then divided pro-rata thereafter between counsel fees and Ford Credit. The thrust of Debtor's objection rests on her contention that the proposed adequate protection payments due Ford Credit are not entitled to "super-priority"[2] status under 11 U.S.C. § 507(b) by reason of Ford Credit's proffered inability to establish that such payments represent "actual and necessary" costs for the preservation of the Debtor's estate. At a hearing on the Debtor's objection, the Court invited the parties to further brief the relevant issues and fixed a subsequent hearing date for additional oral argument. For the reasons set forth below, the Court determines that adequate protection payments have priority over payments awarded to Debtors' counsel under § 330 of the Bankruptcy Code.

---

[1] The Modified Plan was confirmed by Order of the Court on July 13, 2007, calling for payments of $269 for 4 months and $378 for 56 months.

[2] The priority established by § 507(b) is often referred to as "super-priority" because it places § 507(b) claims above all others within § 507(a)(2).

**II. JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B) and (M). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

**III.   DISCUSSION**

In this matter, the Court is being asked to resolve the following recurring and straight-forward legal issue: Whether adequate protection payments to automobile lenders are senior or junior in priority to attorneys fees claims by chapter 13 debtor's counsel. The answer to this inquiry rests upon the interplay of several Code provisions. Upon filing a petition under chapter 13 of the Bankruptcy Code, a debtor is entitled to remain in possession of all property of the estate, pursuant to § 1306(b), which in this case would include the Debtor's 2002 Ford Explorer. Section 1303 allows a debtor to exercise the rights afforded to a trustee under § 363(b), (d), (e), (f), and (l).  This right to retain possession is limited. Section 363(e) provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary **to provide adequate protection of such interest, . . .**

11 U.S.C.§ 363(e)(emphasis added). The concept of adequate protection finds its basis in the Fifth Amendment's protection of property interests. H.R. REP. NO. 95-595, 338-340 (1977), U.S. Code Cong & Admin. News 1978, pp.5963. Adequate protection is also grounded in the

belief that secured creditors should not be deprived of the benefit of their bargain. Id. The Bankruptcy Code does not define adequate protection, but it does provide a non-exclusive list of examples in § 361. Section 361(1) states that adequate protection may be provided by:

> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

11 U.S.C. § 361(1). In summary, § 363(e) authorizes a court to require the trustee to adequately protect creditors whose collateral is declining in value due to its use, sale, or lease; in this regard, § 361(1) provides that one form of adequate protection is requiring the trustee to make periodic cash payments to a creditor whose collateral is being retained pursuant to Section 363(e). 11 U.S.C. § 1303 grants debtors the power of a trustee under § 363(e). Thus, a court may require a chapter 13 debtor to make periodic cash payments to an undersecured creditor to adequately protect the creditor against the depreciation of its collateral which is being retained and used by the debtor. In re Cook, 205 B.R. 437, 440-43 (Bankr. N.D. Fla. 1997).

There is no dispute in this case that Ford Credit is an undersecured creditor with respect to the subject vehicle. The Debtor's Schedule D and two Chapter 13 plans filed in the within proceeding acknowledge that the value of the vehicle is considerably less than the amount due and owing Ford Credit. It is generally accepted that information contained in a debtor's bankruptcy schedules may be considered as an admission. See F.R.E. 801(d) (2)[3]; See also

---

[3] Made applicable to bankruptcy cases by Fed. R. Bankr. P. 9017.

Russell, Bankruptcy Evidence Manual, 2006, Ed. § 801.13; In re Garberg, 2006 WL 1997415 (Bankr. ED Pa. 2006); In re Campbell, 336 B.R.430, 436 (9th Cir.BAP 2005); Larson v. Gross Bank, 204 B.R. 500, 502 (W.D.Tex.1992) (statements in schedules constitute admissions); In re Musgrove, 187 B.R. 808, 816 (Bankr. N.D. Ga 1995) (same); In re Arcella-Coffman, 318 B.R. 463, 475, 476 (Bankr. N.D. Ind. 2004) (recognizing that information in schedules may constitute an admission explaining that "[t]he debtor is of course in the best position to initially evaluate and state the nature, amount and categorization of his/her debts and property.") Thus, without an equity cushion, Ford Credit must look to a stream of cash payments to protect itself against the continuing daily depreciation of the vehicle. This Court must then address the timing and priority of such payments.

As noted in Cook, supra, several courts have concluded that secured creditors are entitled to receive adequate protection payments pre-confirmation to protect them against the decline in value of their collateral. Cook, 205 B.R. 437, 440; See also In re Kennedy, 177B.R. 967, 972 (Bankr. S.D. Ala. 1995) (finding that "adequate protection prevents loss to secured creditors during a case by requiring debtors to pay secured creditors for depreciation of their collateral prior to confirmation"); In re Hinckley, 40B.R. 679 (Bankr. D. Utah 1984) (requiring the debtor to make adequate protection payment directly to a creditor to protect the creditor against depreciation of an automobile); In re English, 20 B.R. 877, 879 (Bankr. E.D. Pa. 1982) (finding that the debtor's offer to maintain current monthly payment to a creditor adequately protects the creditor against depreciation of an automobile); and In re Brickel, 11 B.R. 353 (Bankr. D. Me. 1981) (requiring the debtor to resume monthly payments directly to a creditor, as adequate protection, in order to regain possession of a vehicle). The need for adequate protection

payments do not end at confirmation. An undersecured creditor, such as Ford Credit, is entitled to receive, post-confirmation, a stream of cash payments at least equal to the depreciation of the collateral. The failure to so provide in a Chapter 13 plan would violate the lien retention rights of a secured creditor guaranteed under 11 U.S.C. § 1325(a)(5)(B)(i). As noted by counsel for Ford Credit in his brief, this issue was addressed in detail by Judge Keith Lundin in his well-respected treatise on Chapter 13 practice. Pertinently, Judge Lundin writes:

> Lien retention in section 1325(a)(5)(B)(i) has been interpreted to require that payments through the plan must at least equal depreciation in the value of the collateral during the repayment period. Not to be confused with adequate protection before confirmation or with the payment of present value (interest) after confirmation, lien retention avoids constitutional problems through depreciation and use of collateral by the debtor after confirmation. Put another way, even if the plan recites that secured claim holders retain liens, if the payments proposed by the plan are insufficient to stay ahead of depreciation, the retained liens will erode faster than the allowed secured claim is paid, contrary to the intent of section 1325(a)(5)(B)(i).

Lundin, <u>Chapter 13 Bankruptcy, 3d Ed.</u>, Vol 2, Section 104.2, page 104-4. Additional support may be found in the recently enacted provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), wherein Congress has mandated that adequate protection payments must be paid during the period of the plan. 11 U.S.C.§ 1325(a)(5)(B)(iii)(II).

The Debtor herein does not contest the appropriateness of pre-confirmation adequate protection payments and, indeed, reached a consensual resolution of Ford Credit's demand for same. Likewise, it also appears from Debtor's objection that Debtor acknowledges the need for post-confirmation adequate protection payments. At issue, however, is whether such post-

confirmation adequate protection payments should be paid in advance of other administration expenses, such as debtor's attorneys fees.[4] The debtor correctly notes that the payment of adequate protection payments before payments of other administrative expenses requires application of 11 U.S.C.§507(b) and a determination that adequate protection payments qualify as administrative expenses allowable under §503(b). This very issue has been analyzed exhaustively by Judge Marvin Isgur in In re DeSardi, 340 B.R. 790 (Bankr. S.D. Tex. 2006).

In Desardi, the debtor owned a Dodge Ram truck and proposed to pay Chrysler Credit through the plan with attorney fees being paid before adequate protection payments. The court decided that adequate protection payments could be treated as an administrative priority expense if the payment related to the actual use of the creditors property, thereby conferring a concrete benefit on the estate. 340 B.R. at 798. Judge Isgur held that its administrative expense inquiry centered on whether the estate has received an actual benefit, as opposed to the loss a creditor might experience by virtue of the debtor's possession of the property. Id. In this regard, the Court found that "the phrase 'actual, necessary costs and expenses of preserving the estate' in § 503 includes adequate protection payments paid to enable the debtors to use their vehicles. Debtors in chapter 13 often need their vehicles to drive to work, which in turn allows for preservation of the estate." Id. Judge Isgur further noted:

---

[4] 11 U.S.C. § 503(b)(1)(A) states:

b. After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including -

(1)(A) the actual, necessary costs and expenses of preserving the estate. . . .

§503(b) lists eight additional circumstances that may be included as administrative claims. Among these are "compensation and reimbursement awarded under section 330(a) of this title," which includes debtor's attorneys fees.

> In a chapter 13 case, the debtor has the responsibility
> of making plan payments for the benefit of all creditors.
> In order to meet this obligation, the debtor usually
> must use an estate automobile for the purpose of
> transportation to and from work. Vehicles also allow for
> most families to buy basic necessities such as food and
> clothing. Actual use of the vehicle provides a direct
> benefit to the estate in the form of continued payments
> when the car is used to facilitate work.

DeSardi, 340 B.R. at 799. In this light, the Debtor's contention that Ford Credit's claim is not entitled to administrative status because the Debtor purchased her vehicle for personal, rather than commercial, use is unavailing. In choosing to follow Judge Isgur's focus upon the debtor's use of the vehicle, this Court also takes into consideration that a debtor, seeking to confirm a Chapter 13 plan which provides for payment owing on vehicles and confirmed in accordance with 11 U.S.C. § 1325, implicitly acknowledges that such expenses are both reasonable and necessary for the maintenance and support of the debtor. The Debtor's Modified Plan was confirmed, without objection by the Chapter 13 Trustee, and includes payment for the 2002 Ford Explorer. This Court proceeds then with the understanding that all parties regard the use of the vehicle as necessary for the Debtor's welfare.

Having determined that the adequate protection payments should receive administrative priority under §503(b), the Court turns to whether these payments should also be afforded "super- priority" protections under §507(b). Once again, Judge Isgur, in Desardi[5], supra, examined §507(b) to see if counsel fees should be paid ahead of adequate protection payments

---

[5] This Court is cognizant that DeSardi can be distinguished from the case at bar inasmuch as the District of New Jersey, unlike the Southern District of Texas, has not employed a local rule or uniform plan provision providing for adequate protection payments and according same priority under §507(b). Notwithstanding, Judge Isgur's analysis of the issues and construction of the applicable Code provisions in DeSardi are unquestionably applicable to the facts presented herein.

and held:

> Section 507(b) provides a definitive answer to the debtors' argument that their fees should be paid ahead of adequate protection payments. That section states; If the trustee, under section 362, 363 or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of execution against such property under section 362 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection [citation omitted].

340 B.R. at 800-801.

The Court in Desardi then described the three-prong test set forth in In re Greenwald, 205 B.R. 277 (D. Colo. 1997) to qualify for super-priority treatment. First, adequate protection must have been provided by the trustee under §362, 363 or 364. Second, the creditor must have a claim under §507(a)(2). Third, the protection afforded by the trustee under §§362, 363 and 364 must be inadequate. This Court finds that Ford Credit's claim satisfies all three prongs of the test. Every single day in which Ford Credit must wait for payment, while other administration expenses are paid, Ford Credit's collateral loses value[6] and Ford Credit maintains a risk of loss. As stated in DeSardi:

> In each of these chapter 13 cases, a creditor with a vehicle lien was entitled to adequate protection via § 363(e) and each of these creditors holds a claim under §

---

[6] Whether a vehicle is driven 30,000 miles a year, or only on Sundays by an elderly parent to go back and forth to church, there can be no dispute that a vehicle's value is likely to decrease daily. A cursory reading of any automobile valuation guide, such as NADA, confirms this fact.

> 507(a)(2) via § 503(b)(1)(A). If attorney's fees are paid
> ahead of the adequate protection payments, then
> adequate protection fails; the funds that provide the
> adequate protection would be paid to someone besides
> the protected lender. The three prong test is satisfied.

340 B.R. at 801.

    For the reasons set forth above, the Court rules that adequate protection payments have priority over payments awarded to Debtor's counsel and will enter the proposed form of Order submitted by counsel for Ford Credit.

Dated: July 17, 2007

                                                       */s/ Michael B. Kaplan*
                                                     Honorable Michael B. Kaplan
                                                     United States Bankruptcy Judge